IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR 114-028 |
| | ) | |
| DANNIE O'BRIAN HILL | ) | |

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

The Indictment charges Defendant with distribution of cocaine base, possession with intent to distribute cocaine hydrochloride and cocaine base, possession of a firearm in furtherance of a drug trafficking crime, and possession of a firearm by a convicted felon. Defendant moves to suppress all evidence obtained during the search of his residence and statements he made to law enforcement officers during the search. (Doc. nos. 22, 30-1.) Having considered all arguments and testimony, the Court **REPORTS** and **RECOMMENDS** that Defendant's motions be **DENIED**. Because the Court held an evidentiary hearing, the **CLERK** is **DIRECTED** to terminate the request for a hearing. (Doc. no. 30-2.)

## I.    FACTS

There are two, competing versions of the material facts. One is the version described by Special Agent Ron Rhodes, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), during his testimony at the evidentiary hearing. The other is Defendant's version as recounted in an untested affidavit submitted in support of his suppression motion. Defendant exercised his right to remain silent and did not testify at the hearing.

## A. SA Rhodes' Version of Events

SA Rhodes worked this investigation with federal and state officers on the Regional Anti-Gang Enforcement (RAGE) Unit. Court's recording system, *For the Record* (FTR) 10:51.30-:53.45. ATF SA Matthew Morlan, assisted by SA Rhodes, utilized a confidential informant to make three recorded and controlled drug purchases from Defendant on March 9, March 31, and May 4, 2009. FTR 10:51.24-:52.04; doc. no. 30, Ex. 1, ¶¶ 7, 8, 9. The informant acted under the direction and supervision of officers in the RAGE unit, who provided government funds to the informant to buy drugs from Defendant. (See doc. nos. 26-1, 26-2, 26-3.) Officers searched the informant before and after the drug transactions with Defendant. (Id.) The purchases occurred at Defendant's residence, 3515 Snowden Road, Augusta, Georgia. (Doc. no. 30, Ex. 1, ¶¶ 7, 8, 9.)

On May 11, 2009, SA Morlan applied to U.S. Magistrate Judge W. Leon Barfield for a warrant to search Defendant's residence, describing in support the three controlled purchases and Defendant's identification as an upper level cocaine trafficker during a related investigation of accused trafficker Dennis Sullivan. (See generally doc. no. 30, Ex. 1.) The application also reported Defendant's felony conviction for voluntary manslaughter in 1992. (Id. at 6, ¶ 11.) Judge Barfield approved the application and issued a warrant authorizing the search and seizure of controlled substances and paraphernalia, currency and other proceeds of illegal drug transactions, books or records of drug sales and money laundering, asset information, and information concerning the receipt, transfer, and expenditure of money. Reference is made to the warrant for a more particularized description of each category. (Id., Attach. B.)

On May 11, 2009, twelve officers executed the search warrant at Defendant's residence,

including SA Rhodes and SA Morlan. FTR 10:52.23-:53.15; doc. no. 26-5, p. 1. Beforehand, the officers attended a briefing that included, among other things, a discussion of Defendant's status as a felon and the warrant's description of items authorized to be seized. FTR 11:08.28-:09.56; 11:31.00-.59; 11:33.36-.40. Upon arrival at Defendant's residence, the federal agents wore vests with agency identification, and officers with the Richmond County Sheriff's Office wore their standard uniforms. FTR 11:21.58-:26.20. The deputies set up a perimeter around the house with their marked cars while the other officers, including SA Rhodes and SA Morlan, went inside to conduct the search. Id. Because no one responded when the officers knocked on Defendant's front door, the officers utilized a battering ram on the door and displayed their weapons during entry as a standard safety precaution. FTR 10:54.16-:55.30; 11:35.36-:36.14. Defendant was not at home during the entry, nor was anyone else. Id.

The officers were at the residence approximately three to four hours. FTR 10:57.24-.28. SA Morlan placed a telephone call to Defendant after the officers searched the residence but before they completed the process of seizing items. FTR 10:56.07-:57.43; 11:41.00-:43.37. SA Morlan told Defendant via speaker phone that the officers were executing a search warrant at his residence and that he could come home but was not required to do so. Id. Understandably anxious and eager to learn more, Defendant returned to the residence quickly and voluntarily. FTR 10:57.31-.51; 11:46.38-:47.00; 12:10.09-.13. Defendant passed through the perimeter of uniformed officers, who patted down Defendant for weapons as a safety precaution before he

entered the residence. Id. After the initial pat down, the officers never touched Defendant again that day and he was never handcuffed or arrested. FTR 10:57.52-:58.28;12:17.33-.36.

Officers escorted Defendant into the house, and he sat on a couch in the living room. FTR 10:58.32-.46. SA Rhodes could not recall whether Defendant was instructed to sit on the couch, but the living room "was a natural place to talk." FTR 11:48.05-.27. The officers told Defendant he did not have to be there and could leave at any time. FTR 10:58.40-:59.07. Although Defendant was not free to roam about the residence while the agents were conducting the search and seizure, upon request, he could have been escorted anywhere in the house he wished to go. FTR 11:47.35-.50. SA Morlan sat with Defendant on the couch, while SA Rhodes sat in a chair and two other officers remained in the room as well. FTR 10:58.40-.59.

SA Morlan initiated the conversation by introducing himself and explaining how the investigation led to Defendant and his house. FTR 11:48.49-:51.40. The officers did not formally ask Defendant whether he was willing to talk, but instead simply started asking questions and Defendant answered them voluntarily. FTR 11:57.40-:58.14. The officers did not record the conversation with Defendant, and they did not Mirandize him. FTR 11:55.50-:56.06. The officers never told Defendant he could not leave, and in fact on several occasions they explained to Defendant that he was not under arrest and was free to leave. FTR 11:00.18-.38. The tone of the meeting was calm and devoid of coarse language, threats, or raised voices. FTR 11:01.15-.30. Defendant was cooperative and calm, and he never asked to leave, never refused to speak, and never asked for a break. FTR 11:01.00-:02.10. Defendant never asked for an attorney, and the officers never discouraged him from getting an attorney. FTR 11:02.14-.16; 11:58.20-.40.

The officers prepared an inventory of items seized from the house that included crack and powder cocaine, marijuana, a HI-Point Model C9 9mm Luger with magazine and eight rounds of ammunition, tax returns from 2006, 2007, and 2008, a Ford Expedition, a Suzuki motorcycle, and United States currency. (Doc. no. 30, Ex. 3, pp. 3-4.) Defendant admitted the seized items were his and signed the inventory. Id.; FTR 10:58.43-:59.36. When the officers explained that vehicles purchased with drug proceeds are subject to forfeiture, Defendant voluntarily signed a form abandoning all interest in his Suzuki motorcycle and Ford Expedition, and Defendant gave the officers keys to both vehicles. FTR 10:59.12-11:00.09; 12:03.05-.28; doc. no. 46, Attach. A. Both vehicles have since been returned to Defendant. FTR 12:17.06-.12; doc. no. 46, Attach. B. Defendant was not arrested that day, and officers left Defendant at his home when they completed the search. FTR 12:17.34-.51.

## B.     Defendant's Version of Events

While it is true that SA Morlan told Defendant on the phone he did not have to return his residence, SA Morlan also told Defendant that he needed to come home to put up his dog. (Doc. no. 30-4, Aff. ¶ 3.) SA Morlan never explained during the phone call that a search warrant had been obtained or that a search of his residence was underway. (Id. ¶ 4.) Defendant drove home to find numerous patrol cars on his street and an armed deputy outside of his house. (Id. ¶¶ 5, 6.) After being frisked and escorted into the residence, officers told Defendant to sit on the couch and never said that he was free to leave while the officers were in the residence. (Id. ¶¶ 7, 8.)

The officers told Defendant that an informant had provided information connecting him with illegal drug activity, and they asked if he wanted "to do to somebody else what some people did to you?" (Id. ¶ 9.) "After awhile," two officers questioned Defendant "for a lengthy period,

possibly several hours" about illegal drug activity.  (Id.)  The officers never Mirandized Defendant and did not stop the questioning when Defendant told them he wanted to speak with an attorney.  (Id. ¶ 10.)  Defendant did not feel free to stop the questioning or leave the residence because of the numerous armed agents in and around the residence.  (Id. ¶ 11.)  The officers did not provide Defendant with a copy of the inventory of seized property before leaving the residence.  (Id. ¶ 13.)

## II.  LEGAL DISCUSSION

### A.  Recordings Made by the Informant Comply with the Federal Consent Requirement, and Georgia's Consent Requirement Does Not Apply.

Defendant seeks suppression of recordings made by the informant inside Defendant's home during the three controlled drug purchases because Defendant did not consent to the recordings.  Defendant relies on O.C.G.A. § 16-11-62(2), which makes it unlawful for "[a]ny person, through the use of any device, without the consent of all persons observed, to observe, photograph, or record the activities of another person which occur in any private place and out of public view."  As defense counsel acknowledged at the hearing, however, "it is well settled that federal law governs the admissibility of tape recordings in federal criminal cases, and complaints that the evidence was obtained in violation of state law are of no effect."  United States v. Brazel, 102 F.3d 1120, 1154 (11th Cir. 1997); see also United States v. Blagmon, CR 213-022, 2013 WL 4787013, at *1-3 (S.D. Ga. Sept. 6, 2013) (Wood, C.J.) (rejecting argument for suppression based on contention that recordings by informant violated state law because defendants did not consent); United States v. Soto-Pineda, No. 112-CR-331, 2013 WL 4067966, at *5 (N.D. Ga. July 11, 2013), adopted by United States v. Govea-Vazquez, 962 F. Supp.2d 1325 (N.D. Ga. 2013).

In contrast to Georgia law, federal law requires consent of only one party to the conversation.  See 18 U.S.C. § 2511(2)(c) ("It shall not be unlawful . . . for a person acting under color of law to intercept a wire, oral, or electronic communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to the communication."); United States v. Cass, CR 107-035, 2012 WL 1642045, at *3 (N.D. Ala. May 7, 2012).  Moreover, there is no basis for a Fourth Amendment challenge to an informant's surreptitious recording because a "defendant has no justifiable expectation of privacy when he speaks with someone acting as a government informant, and is unaware a recording device is concealed in the room."  United States v. Laetividal-Gonzalez, 939 F.2d 1455, 1460-61 (11th Cir. 1991), *overruled on other grounds*, United States v. Giltner, 972 F.2d 1563 (11th Cir. 1992).  So long as one party to the recorded conversation knows about and consents to it, there is no Fourth Amendment prohibition to using such evidence in a criminal prosecution.  Id. at 1461.

Here, the informant was a party to the communications and consented to the recordings inside Defendant's home, which the informant made.  Therefore, no Fourth Amendment violation occurred.  See Laetividal-Gonzalez, 939 F.2d at 1460-61; Blagmon, 2013 WL 4787013, at *1-2.  The Court thus recommends denial of Defendant's motion to suppress recordings of the controlled purchases.

**B.      The Search Warrant Is Supported by Probable Cause and Sufficiently Particularized.**

Defendant seeks suppression of all evidence seized pursuant to the search warrant because he alleges that the warrant is neither supported by probable cause nor sufficiently particularized.  As explained in detail below, both arguments are unpersuasive, and the search warrant is unquestionably valid.

### 1.    The Search Warrant Is Supported by Probable Cause.

"Probable cause to support a search warrant exists when the totality of the circumstances allows a conclusion that there is a fair probability of finding contraband or evidence at a particular location." United States v. Flowers, 531 F. App'x 975, 981 (11th Cir. 2013). The affidavit supporting an application "should establish a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity." United States v. Mitchell, 503 F. App'x 751, 754 (11th Cir. 2013) (citations omitted). Appellate courts show great deference to a judicial officer's finding of probable cause. United States v. Bradley, 644 F.3d 1213, 1263 (11th Cir. 2011).

Here, the supporting affidavit clearly established probable cause for the warrant by describing no less than three controlled, recorded drug purchases from Defendant at his residence by the informant. Controlled purchases provide a firm foundation for a finding of probable cause. See, e.g. United States v. Prather, 279 F. App'x 761, 765-66 (11th Cir. 2008) (finding probable cause for search warrants where affidavits contained facts regarding recent controlled purchases of drugs and arrests of persons exiting residence to be searched who possessed drugs); United States v. Wells, CR 305-006, 2005 WL 2237630, at *2 (S.D. Ga. Aug. 19, 2005) ("There is no stronger evidence that the defendant was storing and selling cocaine from his residence and the residence across the street than a controlled purchase of cocaine from the defendant at the location of the search warrants."), adopted by CR 305-006, doc. no. 19 (S.D. Ga. Sept. 12, 2005).

The affidavit information was not stale as Defendant contends. There is no "talismanic rule which establishes arbitrary time limitations for presenting information to a magistrate," and each case must be decided on the particular facts presented. United States v. Holt, 408 F. App'x

229, 234 (11th Cir. 2010). When making this determination, courts "may consider the maturity of the information, nature of the suspected crime (discrete crimes or ongoing conspiracy), habits of the accused, character of the items sought, and nature and function of the premises to be searched." Id. Indeed, the Eleventh Circuit has approved use of information in a warrant application that was more than two years old because the affidavit described a "longstanding and protracted criminal conspiracy." United States v. Harris, 20 F.3d 445, 450-51 (11th Cir. 1994). Here, the supporting affidavit was not stale because it described three recent controlled purchases, the last of which occurred merely seven days prior to issuance of the warrant.

Also meritless is Defendant's argument that the supporting affidavit was deficient because it did not offer facts to establish the informant's reliability and trustworthiness. The cases cited by Defendant miss the mark because they involve anonymous informants or known, but confidential, informants who provided tips without tangible verification. See United States v. Foree, 43 F.3d 1572, 1576 (11th Cir. 1995); United States v. Tucker, 526 F.2d 279, 281 (11th Cir. 1976). Here, reliability and trustworthiness of the informant was not material to establishing probable cause because (1) the informant acted under the direction and supervision of law enforcement officers; and (2) officers were present when the informant arranged the drug transactions, the officers provided official government funds to the informant that he used to make the transactions, and the informant recorded the transactions. The Court thus recommends denial of Defendant's motion to suppress on this point.

### 2. The Warrant Is Sufficiently Particularized.

Defendant argues the warrant invalidly permitted agents to rummage through his residence in search of overly broad categories of information without a factual basis establishing

a nexus between Defendant's alleged criminal activities and his residence or the items to be seized. The warrant, Defendant contends, runs afoul of the Fourth Amendment's particularity requirement, which prevents "general, exploratory rummaging in a person's belongings." United States v. Wuagneux, 683 F.2d 1343, 1348 (11th Cir.1982) (citations omitted). A warrant that fails sufficiently to particularize the place or things to be seized is unconstitutionally overbroad and the resulting general search is unconstitutional. United States v. Travers, 233 F.3d 1327, 1329-30 (11th Cir. 2000); United States v. Mitchell, 503 F. App'x at 754. A description is sufficiently particular when it enables the searcher reasonably to ascertain and identify the things to be seized. Bradley, 644 F.3d at 1259. Technical perfection in the description is not required, but rather the Court should apply a practical margin of flexibility. Id.

There is no merit to Defendant's argument that the affidavit supporting the warrant failed to establish a nexus between the alleged criminal activities and Defendant's residence. On the contrary, the affidavit alleges three controlled, recorded purchases occurring at Defendant's residence.

There is also no merit to Defendant's argument that the warrant's description of items to be seized is too vague and permits the seizure of items with no nexus to drug trafficking. The warrant contained three broad categories of items to be seized, i.e. controlled substances, currency, and books/records/documents. Under each category, however, the warrant delineated particular types of items that agents were authorized to seize. For instance, under controlled substances, the warrant specifically authorized the seizure of "[p]ackaging materials, cutting agents, scales, plastic bags, spoons and other paraphernalia used to store, distribute, cut, weigh, or use controlled substances." (Doc. no. 30, Ex. 1, Attach. B.) Similarly, under the category of

books/records/documents, the warrant delineated specific items related to drug activity in nine, detailed paragraphs. (See id.)

Courts frequently uphold warrants authorizing searches of classes of items common to drug trafficking such as business records and money. Prather, 279 F. App'x at 765-66 (approving warrants authorizing searches for money from drug sales, drug records and paraphernalia, money from sales of communications records and "other indicia of illegal narcotics"); United States v. Morisse, 660 F.2d 132, 136 & n.1 (Former 5th Cir. 1981); United States v. Pineda, CR 1:11-00006, 2012 WL 2906758, at *7 (N.D. Ga. June 4, 2012); see also United States v. Harris, 903 F.2d 770, 775 (10th Cir. 1990) ("The type of criminal activity under investigation in the present case – a drug dealing business - makes it difficult to list with any greater particularity the books and records described to be seized which evidences such activity.") Just as importantly, courts routinely approve remarkably similar warrant categories and reject sweeping allegations of over breadth such as those asserted by Defendant. Prather, 279 F. App'x at 766 ("The warrants were broad with respect to their inclusion of all drug-related items; however, because the police had probable cause to believe drug dealing was occurring at the locations being searched, the scope of the warrants appropriately matched the scope of police suspicion."); United States v. Murdock, CR 410-160, 2010 WL 5538514, at *11 (S.D. Ga. Dec. 17, 2010), *adopted as modified on other grounds by* 2011 WL 43503 (S.D. Ga. Jan. 6, 2011) (Moore, J.).

In sum, the warrant is sufficiently detailed and limited to items that are reasonably related to drug trafficking. Based upon a careful review of the warrant and supporting affidavit, the Court concludes that the description of items to be seized was "as specific as the circumstances

and the nature of the activity under investigation permit[ed]." Wuagneux, 683 F.2d at 1349; see also Prather, 279 F. App'x at 765-66. Law enforcement officers executing the warrant were not unguided and free to rummage through all of Defendant's property. Instead, the warrant narrowed law enforcement's search to items related to the alleged drug crimes. Thus, this argument provides no basis for suppression.

### 3. Even if the Warrant Lacks Probable Cause or Is Overly Broad, Which Is Not the Case, the Leon Good Faith Exception Applies.

Even if Defendant could show that the warrant lacks probable cause or is overly broad, which is not the case, the Leon good faith exception applies because law enforcement's execution of the warrant was objectively reasonable. United States v. Leon, 468 U.S. 897 (1984). "The Supreme Court's decision in Leon stands for the principle that courts generally should not render inadmissible evidence obtained by police officers acting in reasonable reliance upon a search warrant that is ultimately found to be unsupported by probable cause." United States v. Robinson, 336 F.3d 1293, 1295-96 (11th Cir. 2003) (quotation and citation omitted). Pursuant to Leon, suppression is necessary "only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." Id. at 1296.

Searches pursuant to a warrant will rarely require any deep inquiry into reasonableness because a warrant issued by a magistrate judge "normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." Leon, 468 U.S. at 922 (quotation and citation omitted). Nevertheless, "it is clear that in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued." Id. at 922–23. The Leon good faith exception thus does not apply when: (1) the magistrate judge was

misled by information the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) the magistrate judge wholly abandoned his judicial role; (3) the affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where, depending upon the circumstances of the particular case, a warrant is so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid. Robinson, 336 F.3d at 1296.

Here, considering the totality of the circumstances, the Court finds that the Leon good faith exception does apply. Defendant does not allege any material misrepresentations or omissions by law enforcement in obtaining the warrant, and the information set forth in the warrant application is entirely consistent with the sworn testimony of SA Rhodes at the hearing. The issuing judge did not abandon his judicial role. The warrant applications provided a wealth of information that established probable cause. And the warrant is not so facially deficient in any respect, and especially with regard to the issues of probable cause and particularity, that the executing officers could not reasonably presume it to be valid.

### C. The Officers Did Not Exceed Their Authority By Seizing Defendant's Vehicles, Tax Returns, Firearm, and Ammunition.

#### 1. Defendant Abandoned His Vehicles.

Because seizure of the vehicles occurred pursuant to Defendant's voluntary abandonment rather than pursuant to the warrant, there is no merit to Defendant's argument that the seizure exceeded the scope of the warrant. After officers explained to Defendant that vehicles purchased with drug proceeds are subject to forfeiture, Defendant signed an abandonment form and turned the keys over to the officers. Defendant's signature confirmed he "voluntarily abandon[ed] all

13

interest in and rights or claims to" the two vehicles. (Doc. no. 46, Attach. A.) The vehicles have since been returned to Defendant. (Id., Attach. B.) The Court thus recommends denial of Defendant's motion to suppress on this point.

### 2. The Warrant Authorized Seizure of the Tax Returns.

Officers seized Defendant's personal income tax returns for the years 2006, 2007, and 2008. (Doc. no. 30, Ex. 3, pp. 3-4.) Defendant points out that paragraph three of the warrant limited officers to seizing "property tax returns." (See doc. no. 30, Ex.1, Attach. B.) However, paragraph two authorizes seizure of records concerning drug sales and money laundering. (Id.) Personal tax returns are obviously relevant to both topics. See, e.g., United States v. Gamory, 635 F.3d 480, 488 (11th Cir. 2011) (relying in part on existence, or lack thereof, of tax records evidencing legitimate source of income for defendant in proving money laundering case). Moreover, in addition to listing "property tax returns," paragraph three of the warrant authorizes seizing indicia of occupancy, residency, and/or ownership of real estate, information which would also appear on personal tax returns. (Doc. no. 30, Ex. 1, Attach. B.)

Even if the personal tax returns fall outside the scope of the warrant, which they do not, total suppression of all items seized "is not appropriate unless the executing officers' conduct exceeded any reasonable interpretation of the warrant's provisions." United States v. Khanani, 502 F.3d 1281, 1289 (11th Cir. 2007) (citation omitted). "Absent a flagrant disregard of the terms of the warrant, the seizure of items outside the scope of a warrant will not affect admissibility of items properly seized, or constitute reversible error on a direct appeal from conviction." Id. (citations omitted). Here, there is no evidence of a flagrant disregard of the terms of the warrant. As discussed above, a reasonable interpretation of the warrant authorized

seizure of the personal tax returns under paragraphs two and three of Attachment B to the warrant.

Nor does the use of officer discretion in reviewing items before deciding whether to seize them amount to flagrant disregard of the terms of the warrant. See Wuagneux, 683 F.2d at 1349-50. The practical realities of a search permit a brief perusal of items to determine what is authorized by a warrant. Travers, 233 F.3d at 1331; see also United States v. Miranda, 325 F. App'x 858, 860 (11th Cir. 2009) ("In searches for papers, it is certain that some innocuous documents will be examined, at least cursorily, in order to determine whether they are, in fact, among those papers authorized to be seized.") The record here supports the conclusion that, acting in good faith, officers conducted the search in a conscious effort to stay within the limits of the warrant. See Travers, 233 F.3d at 1331. Indeed, SA Rhodes testified that the officers reviewed the list of categories authorized by the warrant in a briefing that occurred just before the execution of the search warrant. The Court thus recommends denial of Defendant's motion to suppress on this point.

### 3. The Plain View Doctrine Authorized Seizure of the Firearm and Ammunition.

Defendant argues for suppression of the 9mm Luger, magazine, and ammunition because the warrant does not authorize seizure of these items. On this point, the warrant's scope is immaterial, however, because the plain view doctrine authorized the seizure. United States v. Folk, 754 F.3d 905, 912 (11th Cir. 2014) (denying suppression of firearm under plain view doctrine because searching officers knew suspect was convicted felon). Warrantless seizure is permissible under the plain view doctrine when (1) the officer is lawfully in the place from which the seized object may be plainly viewed and has a lawful right of access thereto; and (2)

the item's incriminating character is immediately apparent. Id. at 911.

Here, the firearm and ammunition inside the master bedroom closet were lawfully observed during the search for drugs. The bedroom closet certainly qualified as a place where drugs might reasonably be found, as confirmed by the drugs and currency found throughout the master bedroom and the bags of marijuana found in this very closet. (Doc. no. 30, Ex. 3, p. 4.) The incriminating character of the items was immediately apparent because, as SA Rhodes testified, the officers knew about Defendant's prior felony conviction for voluntary manslaughter at the time they executed the warrant. (Doc. no. 30, Ex. 1, p. 6, ¶ 11.) The Court thus recommends denial of Defendant's motion to suppress on this point.

**D.    Suppression of Defendant's Statements to Law Enforcement Is Inappropriate Because Defendant Made Them Voluntarily, While He Was Not In Custody, and Without Requesting Legal Counsel.**

Defendant argues for suppression of all statements he made to officers during execution of the warrant because he was in custody but never Mirandized, requested legal counsel, and made the statements involuntarily. See generally 18 U.S.C. § 3501; Jackson v. Denno, 378 U.S. 368 (1964). Certainly, suppression would be required if any of these three contentions were truthful. But as explained in detail below, the Court finds the sworn, detailed testimony of SA Rhodes to be far more credible on these points than the untested, generalized, and self-serving assertions made by Defendant in his affidavit.

**1.    Mirandizing Defendant Was Unnecessary Because He Was Not In Custody.**

The Fifth Amendment to the U.S. Constitution provides, "No person . . . shall be compelled in any criminal case to be a witness against himself. . . ." U.S. Const. amend V. This basic Constitutional right requires that, prior to conducting a custodial interrogation, law

enforcement officers must Mirandize the suspect. <u>Miranda v. Arizona</u>, 384 U.S. 436, 444 (1966); <u>Florida v. Powell</u>, 559 U.S. 50, 59 (2010). The Supreme Court has defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." <u>Miranda</u>, 384 U.S. at 444.

The test is whether, considering the totality of the circumstances, "a reasonable person in the defendant's position would have understood his freedom of action to have been curtailed to a degree associated with formal arrest." <u>United States v. Colon</u>, - F. App'x - , 2014 WL 4290786, at *1 (11th Cir. Sept. 2, 2014) (citation omitted). Mirandizing a suspect is not required, however, when the restraint imposed by officers is sufficient to constitute a seizure but does not rise to the level of custody. <u>Id.</u> A person is seized when a reasonable person would not feel free to leave the scene of a police encounter at a particular moment but there is no formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. <u>United States v. Luna-Encinas</u>, 603 F.3d 876, 881 (11th Cir. 2010). Because the test is objective, the actual, subjective beliefs of the defendant and the interviewing officer are irrelevant. <u>United States v. Moya</u>, 74 F.3d 1117, 1119 (11th Cir. 1996); <u>United States v. Paige</u>, 241 F. App'x 620, 622 (11th Cir. 2007). Factors to consider include whether "the officers brandished weapons, touched the suspect, or used language or a tone that indicated compliance with the officer could be compelled." <u>United States v. Street</u>, 472 F.3d 1298, 1309 (11th Cir. 2006).

Without question, officers did not advise Defendant of his rights under <u>Miranda</u> before Defendant made statements to them. However, suppression is not required because the circumstances show that Defendant was never in custody. First, officers did not arrest Defendant

or otherwise force him to return home. Instead, when SA Morlan called Defendant to inform him that agents were searching his home, SA Morlan told Defendant that he could come home but did not have to do so. Defendant chose to return home even though, by his own admission, he saw the law enforcement perimeter set up on his street prior to arriving at his residence. No one forced him to continue to the residence.

Upon Defendant's arrival, no officer brandished their weapons in Defendant's direction and, at most, officers protecting the perimeter may have been holding their weapons as a matter of routine practice and procedure so that they could perform their perimeter protection task. After the initial patdown, Defendant was never otherwise touched or handcuffed, and he was not arrested that day. He was never told that he could not leave, and in fact was told several times during the course of his conversation with officers that he was not under arrest and was free to leave. However, Defendant never asked to leave. The tone of the meeting was calm and devoid of coarse language, threats, or raised voices.

In making these factual findings, the Court credits the entire testimony of SA Rhodes. United States v. Williams, 731 F.3d 1222, 1230 (11th Cir. 2013) (recognizing that credibility determinations are within the province of the fact finder and will be upheld "unless [the Court's] understanding of the facts appears to be unbelievable"). He was forthright and precise in his testimony, which parallels with remarkable consistency the written reports of the warrant execution. The Court discredits the untested, generalized, and self-serving statements made by Defendant in his affidavit, particularly his allegations that (1) SA Morlan told him to come home

and take care of his dog; and (2) SA Morlan ordered him to sit on the couch and never informed Defendant he was free to leave. As to Defendant's affidavit assertion that he subjectively believed he was not free to leave, in consideration of the facts surrounding Defendant's encounter with the officers as described above, the Court finds that a reasonable person in Defendant's position would not have believed he was prohibited from leaving.

For these reasons, and having considered the totality of the circumstances, the Court finds Defendant was not in custody when he made his statements to officers, and thus <u>Miranda</u> warnings were not required. The Court thus recommends denial of Defendant's motion to suppress on this point.

### 2. Defendant's Statements Were Voluntary.

In <u>Jackson v. Denno</u>, 378 U.S. 368 (1964), the Supreme Court explained that a defendant is deprived of Due Process if he is convicted, based in any part, on an involuntary confession. 378 U.S. at 376. Coercion may be mental or physical, <u>Blackburn v. Alabama</u>, 361 U.S. 199, 206 (1960), and "sufficiently coercive conduct normally involves subjecting the accused to an exhaustingly long interrogation, the application of physical force or the threat to do so, or the making of a promise that induces a confession." <u>United States v. Thompson</u>, 422 F.3d 1285, 1295-96 (11th Cir. 2005). When deciding whether a confession was voluntary, courts consider the totality of the circumstances including (1) details of the interrogation; (2) the defendant's education, intelligence, and other characteristics; (3) length of detention; (4) questioning that is repetitious or prolonged; (5) physical punishment such as the deprivation of food or sleep; and (6) any promises to induce a confession. <u>United States v. Ransfer</u>, 749 F.3d 914, 935 (11th Cir. 2014); <u>see also</u> <u>Colorado v. Connelly</u>, 479 U.S. 157, 163 n.1 (1986); <u>United States v. Bernal–</u>

Benitez, 594 F.3d 1303, 1319 (11th Cir. 2010); Waldrop v. Jones, 77 F.3d 1308, 1316 (11th Cir. 1996).

Here, considering the totality of the circumstances, the Court finds that Defendant's statements to the officers at his residence were voluntary and the product of a free and deliberate choice, made in the absence of intimidation, coercion, and deception. There is no credible evidence that he believed he was in physical danger or had no choice but to cooperate with the officers. Even if Defendant had harbored such a subjective belief, his state of mind is immaterial without some indication of police misconduct, and the record contains no such indication here. Connelly, 479 U.S. at 167 ("coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary'").

At the time of Defendant's conversation with officers in his residence, he was not expressly or implicitly threatened, and he was not promised any benefit in exchange for speaking with the officers. At the hearing, defense counsel focused on the use of a battering ram to gain entrance to the residence and the fact that officers were armed upon their arrival and entrance to the residence. However, the testimony is undisputed that Defendant was not home to witness the entry. Likewise, although there were a total of twelve officers on the scene at the residence, they were spread out between setting up a perimeter outside the residence and conducting the search within the residence. The conversation between officers and Defendant was focused with SA Morlan and SA Rhodes.

Nor was Defendant subjected to an exhaustively long interrogation, physical force, or abusive language. Officers were at the residence for no more than three to four hours, and Defendant arrived after completion of the initial search. Thus, the total time of questioning was

not lengthy and could not have lasted more than a few hours, as Defendant concedes when he alleges that the interrogation lasted only "several hours." (Doc. no. 30-4, Aff. ¶ 9.) When officers completed execution of the warrant, Defendant was not arrested and was in fact left at the residence. Defendant was very cooperative with the officers on the scene. The tone of the entire encounter was calm; no coarse language was used, no voices were raised, and no threats were made toward Defendant. He did not ask to stop speaking with officers; nor did he never ask for a break or to move around the residence.

Moreover, the conversation with officers occurred within the comfort and recognizable surroundings of Defendant's own home. Once Defendant was escorted into the residence, his discussions took place while he was seated on the couch with SA Morlan. Although questioning in a defendant's home is not dispositive, United States v. Brown, 441 F.3d 1330, 1348 (11th Cir. 2006), "courts are *much less likely* to find the circumstances custodial when the interrogation occurs in familiar or at least neutral surroundings, such as the suspect's home." United States v. Gomes, 279 F. App'x 861, 868 (11th Cir. 2008) (citation omitted); see also United States v. Newton, 369 F.3d 659, 675 (2d Cir. 2004) ("[A]bsent an arrest, interrogation in the familiar surroundings of one's own home is generally not deemed custodial."); United States v. Peck, - F. Supp.2d -, CR 113-171, 2014 WL 1572437, at *14 (N.D. Ga. Apr. 18, 2014) (questioning in a suspect's home weighs against determination of custodial interrogation requiring Miranda warnings).

Defendant does not accuse the officers of acting in any way to threaten, coerce, deceive, or injure him. He merely alleges, in essence, that he was scared and intimidated by the agents and their marked cars, uniforms, weapons, etc. It is beyond peradventure, however, that the

mere execution of a warrant by law enforcement officers is a woefully inadequate basis for suppression in the absence of any threats, use of force, improper inducements, deception, or any other conduct by law enforcement agents to coerce. For these reasons, the Court finds the government has demonstrated by a preponderance of the evidence that Defendant's statements were entirely voluntary. Lego v. Twomey, 404 U.S. 477, 489 (1972) (applying preponderance of the evidence test in voluntariness inquiries); United States v. Grimes, 142 F.3d 1342, 1350 (11th Cir. 1998) (applying preponderance of evidence standard).

For these reasons, there is no basis for this Court to recommend suppression of Defendant's statements, which the Court finds Defendant voluntarily made in the complete absence of any coercion, threats, improper inducements, deception, or any other improper police conduct.

### 3. Defendant Did Not Request Legal Counsel.

The Court rejects as not credible Defendant's self-serving and untested affidavit claim that officers ignored his request for counsel and continued the interrogation despite this request. The law is well-settled that questioning must stop if a suspect unequivocally and unambiguously invokes his rights under Miranda and requests an attorney. Owen v. Florida Dep't of Corr., 686 F.3d 1181, 1194 (11th Cir. 2012). Here, however, as explained in Part II.D.1, the Court credits the entire testimony of SA Rhodes, who testified Defendant never asked for an attorney, and the officers on the scene never discouraged him from getting an attorney. The Court thus recommends denial of Defendant's motion to suppress on this point.

## III.    CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Defendant's motions to suppress be **DENIED**.  (Doc. nos. 22, 30-1.)  The Court further **REPORTS** and **RECOMMENDS** that the government's motion for reciprocal discovery be **DENIED AS MOOT** (doc. no. 24) because the parties stated at the hearing the motion has been resolved.

SO REPORTED and RECOMMENDED this 15th day of September, 2014, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA